UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

WILLIAMS DUKES,
    Plaintiff,

vs.         13-1569

SAVADOR GODINEZ, et.al.,
    Defendant.

## CASE MANAGEMENT AND MERIT REVIEW ORDER

This cause is before the court for consideration of Plaintiff's motion for leave to file an amended complaint [25] and his motion to compel discovery. [47]

I. MOTION TO AMEND

The Plaintiff, a *pro se* prisoner, filed his original complaint pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at Pontiac Correctional Center by various Defendants. After reviewing Plaintiff's allegations pursuant to 28 U.S.C. §1915A, the court found the Plaintiff had adequately alleged Defendant Dr. Andrew Tilden and Nurse Jane Doe were deliberately indifferent to his serious medical condition on October 4, 2012 when they delayed care for a heart attack. *See* February 19, 2014 Merit Review Order. The Plaintiff also alleged the two Defendants committed the state law tort of intentional infliction of emotional distress. All other claims and Defendants were dismissed. *See* February 19, 2014 Merit Review Order.

The Plaintiff identified the Jane Doe Defendant as Nurse Theresa Leroy-Davis and filed his motion for leave to amend his complaint in hopes of adding new Defendants and clarifying his claims against some of the previously dismissed Defendants. [25] The motion is granted. [25]

The court is still required by §1915A to "screen" the Plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if

1

warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

The court first notes that after filing his motion to amend, the Plaintiff filed a motion to dismiss Nurse Leroy-Davis. [40]. Therefore, this Defendant is no longer in the case and the court will not consider the claims alleged against her in the previously filed motion to amend.

The Plaintiff has identified five other Defendants from Pontiac Correctional Center in his amended complaint including Illinois Department of Corrections (IDOC) Director Salvador Godinez, Warden Randy Pfister, Health Care Administrator Terry Arroyo, Wexford Health Source's Chief Executive Officer Mark Hale and Dr. Andrew Tilden. [26]

The Plaintiff repeats his claim alleging Dr. Tilden delayed adequate medical care for nearly four hours on October 4, 2012 when Plaintiff was suffering from severe chest pains, left arm numbness, nausea, shortness of breath, dizziness and neck and back pain. The Plaintiff says he was eventually taken to an outside hospital where he spent the next two days in the Intensive Care Unit. The Plaintiff also claims Dr. Tilden intentionally delayed or denied the Plaintiff's prescribed follow-up care. The Plaintiff says he was directed to return to his cardiologist in four weeks, but he was not allowed to return for two months. In addition, the Plaintiff claims Dr. Tilden either denied of delayed required medications and follow-up testing. The Plaintiff claims as a result, his heart condition has deteriorated. The Plaintiff is reminded an "inmate who complains that a delay in medical treatment arose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996). The Plaintiff has adequately alleged Dr. Tilden was deliberately indifferent to his serious medical condition

when he delayed medical treatment on October 4, 2012 and delayed or denied a follow-up visit, medications and testing.

The Plaintiff claims IDOC Director Godinez knew Dr. Tilden and his employer, Wexford Health Sources, were not providing adequate medical treatment because the Plaintiff mailed numerous letters as well as copies of grievances and medical orders to the Director. As the court has previously explained, this is not sufficient to establish liability under §1983. The IDOC Director is responsible for overseeing all correctional facilities within the state which house thousands of inmates. An individual inmate can not establish liability against a supervisor who has no direct contact with him or even his institution by simply mailing letters or copies of grievances. *See Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir.2009) (a plaintiff cannot create liability on the part of an official who has no direct involvement in the matter, merely by writing a letter of complaint); *Courtney v. Devore*, 2014 WL 7003784, at *2 (7th Cir. 2014)(" chief administrators are ordinarily not personally liable for decisions made by subordinates, even if they receive a letter complaining about those decisions and do not intervene.")

In the same vein, the Plaintiff says Wexford's Chief Executive Officer is "personally responsible" for his inadequate medical care because his company provides medical care to IDOC inmates. Furthermore, the Plaintiff alleges Mark Hale "knew or reasonable should have known" that his employees have not provided adequate medical care to inmates based on previous unspecified grievances and reports. Again, the Plaintiff has failed to adequately state a claim and clearly named Hale as a Defendant simply because he is a supervisor. *See Chavez v. Illinois State Police,* 251 F.3d 612, 651 (7th Cir. 2001) (The doctrine of *respondeat superior* (supervisor liability) can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights."); *Olive v. Wexford Corp.*, 494 Fed.Appx. 671, 673 (7th

3

Cir. 2012)("the head of the prison system's medical hierarchy, also cannot be vicariously liable" for the acts of an individual doctor).

The Plaintiff says Defendants Warden Pfister and Health Care Administrator Arroyo were deliberately indifferent because they knew of the substandard care and medical facilities prior to October 4, 2012. This general and conclusory allegation is insufficient to state a claim pursuant to Federal Rule of Civil Procedure 8.

The Plaintiff also alleges both Defendants Pfister and Arroyo were deliberately indifferent to his need for a follow-up medical care and testing, because each Defendant knew he was not receiving the prescribed care, but did not intervene. Specifically, the Plaintiff says he sent numerous grievances to Defendant Pfister, but the Warden responded by telling the Plaintiff to "address his medical issues with someone else" and the Plaintiff says most of his grievances "ended up in Defendant Arroyo's Health Care Unit." (Amd. Comp., p. 8). The Warden is not a medical employee and is not liable simply because he is involved in the grievance procedure and denied grievances after receiving input from the Health Care Unit. *See George v. Smith,* 507 F.3d 605, 609–10 (7th Cir.2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."); *Love v. Scaife,* 586 Fed.Appx. 234, 235 (7th Cir. 2014)( district court could dismiss prison administrators at initial screening because they "cannot be liable under § 1983 simply because they participated in addressing inmate grievances."); *see also Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir.2005)( "We do not think [a prison official's] failure to take further action once he had referred the matter to the medical providers can be viewed as deliberate indifference."); *see also Hoban v. Godinez*, 502 Fed.Appx. 574, 578-79 (7th Cir. 2012)(top-level administrators are entitled to relegate to others the primary

4

responsibility for specific prison functions without becoming vicariously liable for the failings of their subordinates).

On the other hand, Defendant Arroyo is the Healthcare Administrator who is responsible for managing the medical unit. The Plaintiff says despite numerous letters to Defendant Arroyo, she never assisted in providing the Plaintiff with the prescribed follow-up treatment or appointments. The Plaintiff has adequately alleged Defendant Arroyo was deliberately indifferent when she failed to provide required follow-up medical care.

The court notes that while the Plaintiff states he is suing some of the named Defendants in their official capacities, he has not articulated an official capacity claim simply by alleging all medical care was inadequate for inmates. *See Gray v. Dane County,* 854 F.2d 179, 183 (7th Cir.1988) (§ 1983 plaintiff must allege a "pattern or series of incidents of unconstitutional conduct" to establish the existence of an entrenched practice that has the effective force of a formal policy.)

Finally, the Plaintiff repeats his state law claim of intentional infliction of emotional distress based on Defendant Dr. Tilden's failure to provide medical care for four hours while he was suffering from a heart attack, and Defendants Dr. Tilden and Arroyo's failure to provide the prescribed aftercare. To state a claim of intentional infliction of emotional distress under Illinois law, a plaintiff must allege the defendant's conduct was extreme and outrageous, the defendant knew it was highly probably that his conduct would cause the plaintiff severe emotional distress, and the conduct did in fact cause the plaintiff severe emotional distress. *Fox v Hayes*, 600 F.3d 819, 842 (7th Cir. 2010); *Lifton v Board of Eduction of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005). For the purposes of notice pleading, the Plaintiff has articulated a state law claim.

II. MOTION TO COMPEL DISCOVERY

The Plaintiff has filed a motion to compel discovery stating the Defendants did not provide adequate responses to some of his Requests for Production of Documents. For instance, in his first request, the Plaintiff asks for a copy of Dr. Tilden's employment contract with Wexford Health Sources. (Plain. Mot., p. 1) The Defendants have objected stating the request is irrelevant to the claims before the court. The court agrees and no further response will be required.

In Requests #3, 4 and 5, the Plaintiff asks for copies of any written policies or procedures concerning when medical treatment is to be provided to an inmate in cardiac distress; when an inmate can be approved for access to an outside medical provider; and, procedures concerning treatment prescribed for an inmate by an outside provider. (Plain. Mot, p. 3-5). The Defendants object since any internal policies and procedures are irrelevant to whether the Plaintiff's constitutional rights have been violated. *See Thompson v City of Chicago*, 472 F.3d 444 (7th Cir. 2005)

While the violation of a particular policy would not demonstrate a constitutional violation on its own, the fact that a Defendant did not follow a required policy or procedure is relevant. *See Lynn v. City of Indianapolis*, 2015 WL 179765, at *4 (S.D.Ind. 2015). Therefore, to the extent any written policies exist, the Defendant must provide copies within thirty days.

In Request #6, the Plaintiff asks for a copy of the contract between IDOC and Wexford concerning medical care for Illinois inmates. (Plain. Mot., p. 5-6). The Defendants state they have already provided a copy of the contract and note Wexford is not a Defendant in this lawsuit. No further response is necessary.

In Requests # 7, the Plaintiff asks for the total number of complaints or grievances filed against Wexford or Wexford any staff member during a three year period. (Plain. Mot., p. 6-7)

The Defendants objected claiming the request is irrelevant, improper and unduly burdensome. The court agrees. Whether another inmate has complained about a different medical employee or even one of the Defendants is not relevant to whether that individual provided medical care to the Plaintiff. In addition, any grievances filed by an inmate would be maintained in the individual inmate's master file. Trying to locate all possible grievances for thousands of inmates over a three year period would be unduly burdensome.

Similarly, the Plaintiff asks in Request #8 for any administrative complaints filed statewide against Wexford over a three year period. (Plain. Mot., p. 11). Again, this request is denied as irrelevant, overbroad and unduly burdensome. The Plaintiff's motion to compel discovery is therefore granted in part and denied in part. [47]

IT IS THEREFORE ORDERED:

1) Plaintiff's motion for leave to file an amended complaint is granted.[25]

2) Pursuant to its merit review of the amended complaint under 28 U.S.C. § 1915A, the court finds the Plaintiff alleges: a) Defendant Dr. Tilden was deliberately indifferent to the Plaintiff's serious medical condition when he delayed medical treatment on October 4, 2012; b) Defendants Dr. Tilden and Health Care Administrator Arroyo were deliberately indifferent to the Plaintiff's serious medical condition when they either delayed or denied needed follow-up appointments and testing; and, c) Defendants Dr. Tilden and Arroyo's conduct violated the state law tort of intentional infliction of emotional distress. The claim is stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

7

3) The Clerk of the Court is to add Defendant Terry Arroyo to this lawsuit send Notice of Lawsuit and Waiver of Service Documents to her. The clerk is also to set an internal Rule 16 deadline in 45 days to check on the service of this Defendant.

4) The Plaintiff's motion to compel discovery is granted in part and denied in part as outlined in this order.[47] The Defendant is to provide copies of any relevant, written policies or procedures to the Plaintiff within 30 days of this order.

Entered this 27th day of February, 2015.

s/ Sara Darrow
_____
SARA DARROW
UNITED STATES DISTRICT JUDGE